DAUKSCH, Justice,
dissents.
I respectfully dissent.
The prosecutor engaged in such wrongfully prejudicial, unethically and fundamentally unfair behavior in the trial of this case that it was error for the trial judge to have allowed the trial to go forward. During the voir dire examination, defense counsel was implored by the trial judge to withdraw his motion for mistrial, which the court had deemed substantial enough to grant, when it was feared that an insufficient number of persons in the jury pool was available from which to select a new jury. Although nearly all of the comments were not objected to, I think the quantity and quality of them add up to a sum of fundamental error. Additionally, I am of the opinion that the prosecution has a constitutional duty to see to it that all persons receive a fair trial, free from overreaching and abuse of power. I am also of the opinion that the court, well able to recognize abusive behavior by a state attorney, should step in and put a stop to it.
Some of the comments are here exemplified.

Voir Dire

PROSECUTOR: I don’t know if defendant will take the stand. He doesn’t have to. But should he take take [sic] the stand and he says, Look, you know, he says, listen, folks, from my heart, I truly do not believe what I was doing was wrong. Sincerely, I didn’t want to — I didn’t know what I was doing was wrong.
Now, when you go back to decide the eases in the jury room, ladies and gentlemen, do you understand that a person can be sincerely wrong? In all their sincerity, the fact is, if it’s wrong, it’s still wrong.
[[Image here]]
PROSECUTOR: When you go back into the jury room, do you understand that just because defendant may get up and take the stand and he’s sincere and you feel he’s sincere, that does not make him not guilty?
[[Image here]]
PROSECUTOR: Now, in light of the type of case that we’re dealing with, there is going to be only really one witness, other than the defendant, who was there when the crime was committed....
[[Image here]]
Can you live with the fact that only one other person was in the room at the time that the crime was committed or would you need to have more than one witness?

Closing Argument

[Victim] is — he’s one of the weak ones of our society. He’s not a college graduate. [Victim] is not the classic, perfect citizen.
*797 As a matter of fact, [victim], you know, when you come down to it, you can look at the [victim] and you can say, you know, maybe I could classify, and I’m not saying he is, but you could go back there and you might think in your mind, maybe I can classify him as a refuse of our society.
He uses drugs. He’s dyslexic. He’s brain damaged. He uses drugs that causes brain damage. How could somebody be like that.
[Defendant] noticed it. [Defendant] noticed the weakness.
[[Image here]]
It’s my job to prove this case to you beyond and to the exclusion of a reasonable doubt. It’s my job. I have done it.
I have taken you to the top of the mountain. And you know what, the defense attorney doesn’t like the way we got there.
[Defense attorney] wants more. He wants more. And let me tell you, folks, no matter how much the state attorney proves the case or shows you his evidence, the defense always wants more.
[[Image here]]
PROSECUTOR: Always. There’s no end to it. Ladies and gentlemen, guess who is in charge of producing the evidence to you? [Defense attorney], me.
[[Image here]]
You know what? [Defense attorney] wants a birth certificate. [Defense attorney] wants his mom and dad to come in.
[Defense attorney] wants me to subpoena the library of congress to prove it. What does it need to prove evidence?
[[Image here]]
.... You know that he left Daytona Beach when he was picked up by the police on 3-11-91.
You can go back in the jury room and figure that out. You don’t have to be a brain surgeon to know he was 15 years old.
I have proved that case beyond and to the exclusion of a reasonable doubt. [De-. fense attorney] doesn’t like it. Hey, I am in control of this case. I can — I’m in control of this case.
■ You know what? I could have brought in everybody that [defense attorney] wants me to bring in. What would that have done?
That would have put you what, two, three, if we put in the weekend, five, six days away from when [victim] testifies.
[[Image here]]
Now, come on, folks. If somebody the opposite sex walks up to you when you were 15 years old, what is a reasonable person to do, when they start asking you questions like that and the tape recorder is running?
[[Image here]]
... She’s a good cop and she’s an honest cop. She’s an honest investigator.
[[Image here]]
... When you decide that this happened, the real questions becomes a question of this, how many times did it happen.
He came in here and he testified to you, it happened seven times. That’s 21 counts.
You go back into the jury room and you make a decision that it was less than that, and I submit to you that would be an error.
[[Image here]]
... It’s no wonder this kid is messed up. Look at the evidence.
You can sit here and you can look at [defendant] and you can say to yourself, you know, I don’t know how anybody can do this kind of act.
[[Image here]]
The evidence is, he did it. That’s the evidence. That’s the evidence you have to take back into that jury room.
[Defense attorney] argues, why didn’t he introduce that paper, why didn’t he introduce the report? When I stood up with the report, who stood up in opposition? [Defense attorney] knows the rules of evidence and he argued that.
He wants records of Marino’s, records of where [defendant] was living, records of the apartment. He wants records. He *798 wants birth certificates. He wants papers to show where people were working.
[[Image here]]
... He didn’t tell you it hadn’t been done. He told you it hadn’t been shown to you.
That’s what he told you.
[[Image here]]
But we know he was 15, because the one thing he could say is, finally I tripped out on acid, and I called my mom, and the cops came and got me, and it was March 11th, 1991.
I was 15 years old. I got there at the beginning of February. It happened at the Desert Inn. And it confirms everything he said, everything.
[[Image here]]
... You go back into the jury room and you ask the question, why is this kid coming in here and telling us this unless it happened.
Why would this kid come in and subject himself to this unless it happened.
There’s been no deals with this kid....
[[Image here]]
And I can tell you something, that based on the evidence and the law, I want to just tell you, I submit to you that a not guilty verdict would be contrary to the law and would not be a verdict that speaks the truth.
[[Image here]]
I don’t know whether or not he’s going to bring up anything new. I don’t have an opportunity to say anything if he does bring up anything new.
But ask yourself a couple of questions if he does. Is there evidence for it or is it a probability. Is there evidence for it or is it just a stab in the dark.
And is there evidence for the stab in the dark.
[[Image here]]
... [Victim] as he sat there in that chair, and you watched his demeanor, not the greatest person in the world, if you want to look at him that way, but he’s still a victim.
He was still molested by [defendant] and [defendant] should be found guilty. He should be found guilty.
The comments are wrong because they 1) evoke sympathy for the state’s witness; 2) constitute an improper comment on defendant’s right to remain silent;[1] 3) shift burden of proof; 4) vouch for the credibility of the state’s witnesses; 5) state the prosecutor’s beliefs; 6) disparage defense counsel; and 6) invade the jury’s province. For these reasons I would reverse the conviction and order a new trial.

. After the trial court expressed its concern that it might be difficult to obtain an impartial jury because of extensive press coverage, defendant waived his objection to these comments and . withdrew his motion for mistrial.